**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MAXIMO CASTRO<br>a/k/a "CARL WORTHINGTON,"<br><br>Defendant. | Criminal Action No. 11-00492 (GC)<br><br>**MEMORANDUM ORDER** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon Defendant Maximo Castro's Motion for Reconsideration of the Court's denial of his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (the "First Step Act"). (ECF No. 90.) The Court has carefully considered the submissions and decides the matter without oral argument under Local Civil Rule 78.1(b), which applies to criminal cases pursuant to Local Criminal Rule 1.1. For the reasons stated herein, and other good cause shown, the motion is **DENIED** without prejudice.

**I. BACKGROUND**

  On or about July 15, 2011, Defendant Maximo Castro was charged in a two-count indictment for attempting to rob a TD Bank branch in Weehawken, New Jersey, on May 31, 2011. (ECF No. 8.) Defendant was alleged to have taken about $5,100.00 by force or violence from the bank, using a firearm. (*Id.* at 1-3.[1])

---

[1]  Citations to page numbers within record documents (*i.e.*, "ECF No.") refer to the page numbers stamped on the documents by the Court's e-filing system.

On December 22, 2011, Defendant was found guilty by a jury of bank robbery by force or violence in violation of 18 U.S.C. § 2113(a), (d) and possession of a firearm in furtherance of bank robbery in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 46.) Defendant was subsequently sentenced to a total 210-month term of imprisonment (150 months for bank robbery by force or violence and 60 months for possessing a firearm while committing the bank robbery). (ECF No. 76.) According to the website of the Bureau of Prisons, Defendant's release date is currently set for August 10, 2026. WEBSITE OF THE BUREAU OF PRISONS, *Find an inmate*, https://www.bop.gov/mobile/find_inmate/ (last accessed April 21, 2024).

On October 25, 2021, Defendant *pro se* filed a motion for compassionate release, asking the Court to reduce his sentence. (ECF No. 83.) Defendant wrote that he had "extraordinary and compelling reasons" for sentence reduction, "namely: (1) [Defendant's] becoming infected with Covid-19 while in the custody of the F.B.O.P. due to gross negligence and/or deliberate indifference of staff, [Defendant's] persistent and continuing 'long hauler' symptoms, and the very real and dangerous risk of [Defendant] becoming infected again by one of the deadly Covid-19 variants; and (2) [Defendant's] Post-Conviction-rehabilitation." (*Id.* at 1.) Defendant noted that he tested positive for COVID-19 in December 2020 and experienced symptoms such as difficulty breathing, head and body aches, loss of taste and smell, and fatigue. (*Id.* at 13-14.) A year later, Defendant still suffered from a cough, loss of taste and smell, and shortness of breath, despite being vaccinated on June 11, 2021. (*Id.* at 14.) Defendant writes that, as "a former high level athlete, he "suspects that . . . he will never be 100% again." (*Id.*) Defendant complains of the indifference of the prison staff and the risk of catching COVID-19 again while incarcerated. (*Id.* at 15.) Defendant also writes that despite his prior criminal history, he has now gone more than eight years during his incarceration "without a single sanction or disciplinary infraction of any

kind" and "this dramatic turn around should be considered as miraculous." (*Id.* at 18.) Defendant also asks the Court to consider that his "mother is now 77 years old, legally blind and on 3 times per week dialysis." (*Id.* at 19.) Defendant says that his mother "has no one to take care of her," which he "would be more than willing to do." (*Id.*)

On December 3, 2021, Defendant refiled his motion for compassionate release, including his signature, the date of October 20, 2021, and that he swore to his motion's contents under penalty of perjury. (ECF No. 86.)

On April 1, 2022, the Court denied Defendant's motion without prejudice. (ECF No. 89.) The Court found that Defendant had not submitted proof that he had exhausted all administrative remedies nor that thirty days had lapsed since the receipt of Defendant's request by the warden of Defendant's facility. (*Id.* at 3-4.) The Court requested Defendant to submit proof that he had exhausted all administrative remedies in accordance with 18 U.S.C. § 3582(c)(1)(A).

More than a year later, in May 2023, the Court received correspondence from Defendant asking the Court to reconsider its denial of the motion for compassionate release. (ECF No. 90.) Defendant claims that he did not receive the Court's April 1, 2022 order until March 2023. (*Id.* at 1.) He attaches to his correspondence a September 8, 2021 response from the Federal Bureau of Prisons' Central Office denying his request for compassionate release. (ECF No. 90-1 at 3.) It appears that Defendant received this denial on October 18, 2021, shortly before filing his initial motion for compassionate release. (*Id.* at 1.)

The matter was subsequently reassigned to the undersigned after Defendant's motion for reconsideration was filed.

## II. LEGAL BACKGROUND

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see, e.g.*, *Dillon v. United States*, 560 U.S. 817, 824 (2010) (noting that a sentence of imprisonment "may not be modified by a district court except in limited circumstances"), the First Step Act permits courts to grant compassionate release when there are "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A).

The Act was passed in December 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194 (2018), and, in relevant part, it provides:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> [18 U.S.C. § 3582(c)(1)(A).]

Once the procedural prerequisites are satisfied, a district court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[2] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction."

---

[2] The Sentencing Commission's U.S. Sentencing Guidelines ("U.S.S.G.") policy statement is not binding on district courts, but "it still sheds light on the meaning of extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

4

*United States v. Burd*, Crim. No. 21-86, 2023 WL 3271167, at *1 (D.N.J. May 5, 2023) (quoting *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020), *aff'd*, 837 F. App'x 932 (3d Cir. 2021)).

## III. DISCUSSION

### A. PROCEDURAL PREREQUISITES

The procedural prerequisites for judicial review of compassionate release motions are relatively straightforward. Before making such requests to the sentencing court, "the defendant must fully exhaust administrative remedies within the [Bureau of Prisons] or wait 30 days from the date the facility's warden receives defendant's request, whichever happens first." *United States v. Alston*, Crim. No. 03-844, 2023 WL 2238297, at *2 (D.N.J. Feb. 27, 2023) (citing 18 U.S.C. § 3582(c)(1)(A)).

In asking the Court for reconsideration, Defendant provides evidence that he appealed the denial of his compassionate release request to the Federal Bureau of Prisons' Central Office on July 28, 2021, asking the Central Office to consider his "long haul" symptoms from COVID-19. (ECF No. 90-1 at 2.) The Central Office, National Inmate Appeals Administrator, denied the request on September 8, 2021, finding that although Defendant "tested positive for COVID-19 on December 10, 2020, [his] symptoms resolved by December 21, 2020. [His] condition is stable. [His] concerns regarding infection [did] not warrant a compassionate release from [his] sentence at [that] time." (*Id.* at 3.) Based on this documentation and the lack of disagreement from the Government, the Court will deem Defendant to have exhausted his administrative remedies and proceed to evaluate Defendant's motion for compassionate release on its merits. *See Sharpe v. Costello*, 289 F. App'x 475, 478 (3d Cir. 2008) ("No administrative grievance is considered to

have been fully and finally exhausted until denied by the Bureau of Prisons's Central Office."); *United States v. Grant*, Crim. No. 18-34-3, 2022 WL 558347, at *5 n.6 (E.D. Pa. Feb. 24, 2022).

### B. EXTRAORDINARY AND COMPELLING REASONS

The First Step Act does not define "extraordinary and compelling reasons," which means that district courts have some "flexibility and discretion to consider the unique circumstances" for each compassionate release motion. *United States v. Doolittle*, Crim. No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398-99 (E.D. Pa. 2020)). When giving shape to this "otherwise amorphous phrase," courts may look to the statute's "text, dictionary definitions, and the policy statement" of the U.S. Sentencing Commission. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). In *Andrews*, the district court explained that "[t]he ordinary meaning of extraordinary is '[b]eyond what is usual, customary, regular, or common.' And the ordinary meaning of compelling need is '[a] need so great that irreparable harm or injustice would result if it is not met.'" *United States v. Andrews*, 480 F. Supp. 3d 669, 682-83 (E.D. Pa. 2020) (first quoting *Extraordinary*, Black's Law Dictionary (10th ed. 2014); and then quoting *Compelling Need*, Black's Law Dictionary (10th ed. 2014)).

Here, the Court finds that Defendant has not established "extraordinary and compelling reasons." As to Defendant's contraction of COVID-19 in December 2020 and his fear of contracting it again, it is unfortunate that Defendant has suffered and apparently continues to suffer from post-COVID-19 symptoms, but Defendant has not demonstrated that his ongoing symptoms are of the kind that warrant a reduction of his sentence. Defendant has not shown, for example, that he is specially vulnerable, that he cannot provide himself with the necessary self-care within the correctional environment, or that he faces an actual, non-speculative risk of further exposure. Defendant also acknowledges that he was vaccinated in June 2021. (ECF No. 83 at 14.) Courts

in this District have regularly denied similar requests for compassionate release because of COVID-19, particularly after vaccines became widely available. *See, e.g.*, *United States v. Bishara*, Crim. No. 19-496, 2023 WL 4487766, at *2 (D.N.J. July 12, 2023) ("[W]hile this Court is sympathetic to Defendant's medical conditions—asthma and diabetes—he has failed to show that he is particularly vulnerable to developing severe illness due to COVID-19."); *United States v. Ragan*, Crim. No. 21-405, 2023 WL 4487772, at *3 (D.N.J. July 12, 2023) ("Although asthma and obesity may increase a defendant's risk of severe illness should he contract COVID-19, Defendant has not shown that his alleged medical conditions are uncontrolled or that he is at an increased risk of contracting COVID-19 at FMC Devens."); *United States v. Reddick*, Crim. No. 11-00293, 2022 WL 16922093, at *3 (D.N.J. Nov. 14, 2022) ("[N]ow that COVID-19 vaccinations are available to inmates in the Bureau of Prisons, compassionate release motions on the basis of COVID-19, Defendant's included, generally lack merit."); *United States v. Cottle*, Crim. No. 18-113, 2022 WL 1963658, at *2 (D.N.J. June 6, 2022) ("The Court certainly takes seriously Defendant's asthma diagnosis. But Defendant has not sufficiently shown how his condition is exacerbated by COVID-19 where he is fully vaccinated and has previously recovered from the virus.").

As to Defendant's aging mother, Defendant has not provided information as to her current care or how she has been managing her condition on a day-to-day basis, and why it is necessary for Defendant to be released to provide her with care.[3] In his initial motion, Defendant simply

---

[3]   Defendant also has not shown that he exhausted this issue with the Bureau of Prisons. His appeal to the Central Office noted the COVID-19 concerns but did not reference the need to care for his mother. (ECF No. 90-1 at 1-3); *see also United States v. McNair*, 481 F. Supp. 3d 362, 368 (D.N.J. 2020) ("Permitting inmates to bypass that requirement by presenting one reason for relief to the BOP and another to the Court would create an end-run around the exhaustion requirement and deprive the BOP of the opportunity to consider the request.").

asserted that his "mother has no one to take care of her," and that he would be willing to do so. (ECF No. 83 at 19.) In his more recent correspondence, Defendant claims that he would be his mother's "primary caregiver" if released. (ECF No. 90 at 2.) Without more, the Court is not persuaded that this in fact warrants a reduced sentence, even considering the recent amendment to Sentencing Guideline 1B1.13(b)(3)(C) that states that extraordinary and compelling reasons include "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." *See, e.g., United States v. Svak*, Crim No. 15-157, 2024 WL 463258, at *3 (W.D.N.C. Feb. 6, 2024) ("Defendant has been incarcerated for years and did not advise the Court as to who has been caring for his parents during this time . . . . Defendant has the burden to show the Court that he is the only available caregiver for his parents, and he has not done so. Accordingly, Defendant's desire to care for his parents does not qualify as an extraordinary and compelling circumstance justifying a reduction in his sentence." (citations omitted)); *United States v. Young*, Crim. No. 16-10, 2023 WL 8722060, at *3 (W.D. Va. Dec. 18, 2023) ("Young has the burden of showing that he is the only available caregiver for his incapacitated parents and he has not done so here."); *United States v. Bishop*, Crim. No. 09-315, 2023 WL 2023454, at *3 (W.D. Pa. Feb. 15, 2023) ("But, in this case, Defendant has not produced any evidence to show his parents require care, nor evidence to prove he is the only available caregiver.").

Moreover, the unfortunate reality is that "[i]t is not uncommon . . . for a criminal sentence to impose burdens, sometimes severe ones, on family members." *United States v. Dunich-Kolb*, Crim. No. 14-150, 2022 WL 580919, at *8 (D.N.J. Feb. 14, 2022). A defendant who engages in the kind of serious criminal activity that Defendant did in this case (robbing a bank while using a firearm) knowing that he has family members who might suffer by his absence cannot then claim that he should have a reduced sentence because of the foreseeable burdens placed on the

defendant's family members. At this stage, compassionate release requires more than a belief that a family member would be better served by a defendant's presence than by his absence; there ordinarily must be a demonstration that an irreparable harm or injustice will result unless defendant is released. *See United States v. Claude*, 504 F. Supp. 3d 460, 462 (E.D. Pa. 2020), *aff'd*, 16 F.4th 422 (3d Cir. 2021) ("[A] 'compelling need' is a 'need so great that irreparable harm or injustice would result if it is not met.'" (citation omitted)).

### C. SECTION 3553(A) FACTORS

Because Defendant has not established an extraordinary and compelling reason, the Court need not consider the § 3553(a) factors. However, even if the circumstances were extraordinary, the factors would weigh against release. *See* United *States v. Tapia*, Crim. No. 23-1811, 2023 WL 4575946, at *2 (3d Cir. July 18, 2023) ("A district court 'may reduce the term of imprisonment' and 'impose a term of probation or supervised release' if it finds that 'extraordinary and compelling reasons warrant such a reduction.' Before granting such relief, a district court must consider the sentencing factors in § 3553(a)." (quoting 18 U.S.C. § 3582(c)(1)(A)(i))).

The Court appreciates Defendant's efforts to rehabilitate and his claim that he has been without sanction or disciplinary infraction for a significant period while incarcerated. The Court encourages Defendant to continue to work on his rehabilitation. For now, however, "[a] reduced sentence here would not 'reflect the seriousness of the offense[s],' 'promote respect for the law,' or 'provide just punishment for the offense[s].'" *United States v. Manon*, Crim. No. 16-00460, 2022 WL 408958, at *4 (D.N.J. Feb. 10, 2022) (citing 18 U.S.C. § 3553(a)(2)(A)). Nor would it "afford adequate deterrence to criminal conduct," *United States v. Burd*, Crim. No. 21-86, 2023 WL 3271167, at *6 (D.N.J. May 5, 2023) (citing 18 U.S.C. § 3553(a)(2)).

As the Court found at sentencing:

> There can be no minimization of the seriousness of not just bank robbery, but bank robbery with a weapon, and with so many individuals present in that bank and the impact.
>
> . . . .
>
> Mr. Castro's willingness to engage in this activity on that day, the risk that it put everyone in, and, certainly, anytime you possess a firearm, anything can happen, and how things could escalate, and we could all only be thankful that no one was injured as a result of this activity, but it was extremely, extremely serious.
>
> Unfortunately, Mr. Castro spent virtually his entire adult life in and out of prison, and was only out for a few months, seemed to be doing all right, working; but, then, despite having a job, despite being supervised, and he was on federal supervision at that time, went about committing this crime.
>
> . . . .
>
> Deterrence is clearly an issue here because Mr. Castro has only given us a lifetime of committing crimes, and he's had some substantial sentences and it has not had adequate impact. The fact is, he was only out of federal custody for a few months and then committed this crime. There is the need for a public or general deterrence with regard to these kinds of crimes and how others will see it and think about it if they do think about it.
>
> [(ECF No. 77 at 37-40.)]

Although the Court believed that there may have been "psychological issues involved," it emphasized that "the bottom line is, no matter what, you can't engage in criminal activity." (*Id.* at 40.) The Court sees no reason to depart from its prior analysis or sentence at this time in order to promote respect for the law, to provide just punishment, and to afford adequate deterrence.

## IV. CONCLUSION & ORDER

For the foregoing reasons, and other good cause shown,

**IT IS** on this 23rd day of April, 2024, **ORDERED** as follows:

1. Defendant's Motion for Compassionate Release is **DENIED** without prejudice.

2. The Clerk is directed to terminate the motion pending at ECF No. 90.

3. The Clerk is directed to mail a copy of this Memorandum Order to Defendant via regular United States mail.

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

11